**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ENGS COMMERCIAL FINANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-4582 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| PREMIERE COPIER, INC., MARK D. | ) | |
| KLENIN, and TOD R. NORTH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Engs Commercial Finance Co. is an Illinois-based financing company that offers loans for the purchase of commercial equipment. In 2020, Engs received a call from Premiere Copier, a Colorado-based seller of commercial copiers and printers. Premiere Copier asked Engs about the possibility of financing the sale of equipment to its customers.

That introductory call led to a steady stream of funds, all of which flowed from Illinois. In the months that followed, Engs entered into dozens of commercial loan agreements with Premiere Copier's customers to finance the sale of expensive office equipment.

Premiere Copier coordinated each of the loans. To get the ball rolling on each loan, Premiere Copier sent invoices and other information to Engs in Illinois. Engs, in turn, financed the loans from Illinois. Millions of dollars left the Land of Lincoln.

According to the complaint, it was all a fraud. The invoices contained inflated values for the equipment, meaning that Premiere Copier misrepresented the value of the collateral. The equipment wasn't worth what Premiere Copier said it was worth, and the inflated values led to excessive loans. Engs loaned a lot for equipment that was worth a little.

In fact, the buyers did not want or need the equipment at all. The buyers wanted working capital. Truth be told, the loans were working capital loans, disguised as equipment loans. And in exchange, Premiere Copier received cash kickbacks. Engs made the loans, and Premiere Copier and its customers made off with the proceeds.

Defendants, in turn, moved to dismiss for lack of personal jurisdiction. As Defendants see it, they never set foot in Illinois, and never entered into a contract with Engs. In response, Engs points out that Premiere Copier sent the fraudulent invoices to Engs in Illinois, and received money that Engs sent from Illinois.

For the reasons stated below, the motion to dismiss is denied.

## Background

Plaintiff Engs provides secured financing to buyers of commercial equipment. *See* Cplt., at ¶ 14 (Dckt. No. 1). Engs is based in Itasca, Illinois. *Id.* at ¶ 4; *see also* Kerrins Dec., at ¶ 3 (Dckt. No. 12-1).

Premiere Copier sells copiers, printers, and other digital solutions. *See* Cplt., at ¶ 18 (Dckt. No. 1). Premiere Copier is a Colorado company, and is based in Colorado. *Id.* at ¶ 6. Mark Klenin and Tod North are the founders, co-owners, and officers of Premiere Copier. *Id.* at ¶¶ 15–16.

In December 2020, Premiere Copier called Engs about the possibility of financing the sale of equipment to its customers. *See* Kerrins Dec., at ¶ 4 (Dckt. No. 12-1). The call was received by employees of Engs in Illinois. *Id.*

The record does not reveal who, exactly, placed that introductory call on behalf of Premiere Copier. But the key point is that Premiere Copier called Engs (in Illinois), not the other

way around.  And the record reveals that Klenin and North were the primary points of contact on behalf Premiere Copier throughout the relationship.  *Id.* at ¶ 5.

That introductory call launched a series of financing agreements.  In the months that followed, Engs agreed to provide financing to dozens of Premiere Copier's customers for the purchase of copiers and printers.  *Id.*  Premiere Copier introduced the customers to Engs.  *See* Cplt., at ¶ 22 (Dckt. No. 1).  All told, Engs entered into 46 loan agreements, and the total amount of the loans exceeded $4 million.  *Id.* at ¶¶ 2, 48–49.

Premiere Copier facilitated the financing on behalf of its customers.  For each loan, Premiere Copier sent an invoice to Engs showing the supposed price of the product purchased by the customer.  *Id.* at ¶ 23; *see also id.* at ¶ 30.  Premiere Copier sent the invoices and customer information to Engs by email.  *See* Kerrins Dec., at ¶ 8 (Dckt. No. 12-1).  Klenin and North handled the invoices and customer information on behalf of Premiere Copier.  *Id.*

Engs, in turn, received the emails in Illinois.  *Id.*  Engs then entered into loan agreements with each of the customers (not with Premiere Copier).  *Id.* at ¶ 6; Cplt., at ¶ 22 (Dckt. No. 1).

Defendants facilitated the flow of funds, too.  For each loan, Premiere Copier sent a W-9 and wire instructions to Engs in Illinois.  *See* Kerrins Dec., at ¶ 9 (Dckt. No. 12-1).  Based on those instructions, Engs disbursed the loan proceeds directly to Premiere Copier for the amount in the invoice.  *See* Cplt., at ¶ 24; Kerrins Dec., at ¶¶ 10–11.  Engs wired funds from its accounts in Illinois.  *See* Kerrins Dec., at ¶ 10.

According to the complaint, Engs was duped.  The customers never wanted to purchase the as-described equipment at the as-described price.  *See* Cplt., at ¶¶ 2–3, 27 (Dckt. No. 1).  Instead, Premiere Copier "promised working capital (cash) to these Borrowers and, in fact, these

Borrowers received a cash 'kickback' payment from Premiere Copier after Engs funded the Loans and paid the Invoice price for the Printers." *Id.* at ¶ 27.

In other words, Premiere Copier purported to sell office equipment to its customers, and included inflated values for the equipment on the invoices. But the equipment wasn't worth the amount stated on the invoices. So, the value of the equipment was overstated, and the loans were undersecured. *Id.* at ¶ 2 ("[T]he printers are worth far less than represented, all of these loans are severely undersecured and Engs' funding was not used to purchase expensive printers but was instead split between Premiere Copier and the borrowers.").

And now, many of the loans issued by Engs are in default, and the loan collateral (*i.e.*, the printers) are worth far less than Defendants represented. *Id.* at ¶ 3.

For example, in 2021, Engs entered into two commercial finance agreements with a company, NGL & Erosion Control Group LLC, so that the company could buy printers from Premiere Copier. *Id.* at ¶¶ 32–40; *see also* Commercial Finance Agreement (Dckt. No. 1-3). Premiere Copier sent Engs an invoice, representing that it had contracted to sell the printers to NGL for $87,495. *See* Cplt., at ¶ 41 (Dckt. No. 1); *see also* 3/4/2021 Invoice (Dckt. No. 1-4). And then, Engs disbursed the loan proceeds to Premiere Copier. *See* Cplt., at ¶ 42.

In reality, the printers were worth far less than Premiere Copier had represented. *Id.* at ¶ 43. And in fact, NGL didn't even *want* to buy the printers. *Id.* at ¶ 44. Instead, Premiere Copier sent NGL a kickback of $40,000 from the disbursed loans, and kept the remainder of the cash for itself. *Id.* at ¶¶ 46–47; *see also* FedEx Check (Dckt. No. 1-5).

All in all, Engs alleges that it entered into dozens of fraudulent loan contracts through Premiere Copier, totaling millions of dollars. *See* Cplt., at ¶¶ 48–50 (Dckt. No. 1). Engs

assigned and sold some of the loans, leaving 31 loans on its books with a total funding amount of over $2.7 million. *Id.* at ¶ 50. Of the 31 loans, 12 have defaulted, and counting. *Id.* at ¶ 51.

When it got wind of the scheme, Engs sued Premiere Copier, Klenin, and North, bringing claims of fraud and unjust enrichment under Illinois law. *See* Cplt. (Dckt. No. 1). Defendants responded with a motion to dismiss based on lack of personal jurisdiction. *See* Defs.' Mtn. to Dismiss (Dckt. No. 10). That motion is now before the Court.

## Legal Standard

When considering a motion to dismiss for lack of personal jurisdiction, a district court must "read the complaint liberally, in its entirety, and with every inference drawn in" the plaintiff's favor. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (citation omitted). Additionally, a district court can consider matters outside of the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

A plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Rsch. Found.*, 338 F.3d at 782; *see also Curry Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). The tie goes to personal jurisdiction.

A district court must hold an evidentiary hearing when personal jurisdiction turns on the resolution of a dispute about material facts. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). But here, none of the parties point to any material facts in dispute. The parties gave this Court no reason to hold an evidentiary hearing, so it won't hold one. *Id.*; *see also Harbor Grand, LLC v. EMCASCO Ins. Co.*, 2022 WL 4079436, at *1 (N.D. Ill. 2022) (declining to hold an evidentiary hearing because there were no material factual disputes); *Urban 8 Danville Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 2020 WL 3058101, at *2 n.4 (N.D.

Ill. 2020) (same); *RSK Enters., LLC v. Comcast Spectator, L.P.*, 2018 WL 319318, at *5 (N.D. Ill. 2018) (same).

The party asserting personal jurisdiction – here, Engs – bears the burden of proof. *See Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). When a court resolves a motion to dismiss for lack of personal jurisdiction based on the briefs, without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found.*, 338 F.3d at 782 (citation omitted); *see also Hyatt Int'l Corp.*, 302 F.3d at 713.

### Analysis

Personal jurisdiction is about a court's power over the litigants themselves. At bottom, personal jurisdiction is about personal liberty. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Federal courts look to state law because their "authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

A federal court sitting in diversity can exercise jurisdiction over a defendant "only if authorized both by Illinois law and by the United States Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction over

defendants who engage in a number of specifically enumerated acts, including the "transaction of any business within this State" and the "making or performance of any contract or promise substantially connected with this State." *See* 735 ILCS 5/2-209(a)(1), (7).

The Illinois long-arm statute also contains a catch-all provision that authorizes courts to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *See* 735 ILCS 5/2-209(c). There is "no operative difference" between the federal and state Constitutions on the limits of personal jurisdiction. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The "Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause . . . so here the state statutory and federal constitutional inquiries merge." *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The two-part analysis collapses into one – if personal jurisdiction passes constitutional muster, it complies with Illinois law, too.

To satisfy the Due Process Clause, a defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1984).

Personal jurisdiction comes in two forms: general and specific. *See Daimler*, 571 U.S. at 126–28. A court has general jurisdiction over a defendant only if that defendant has continuous and systematic connections to the forum state. *Id.* at 127. General jurisdiction means that the defendant is so "at home" in the forum state that he or she can be sued there for anything, even a

claim that has no nexus to the state at all.  *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

A court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities."  *Mobile Anesthesiologists Chicago*, 623 F.3d at 444; *see also Daimler*, 571 U.S. at 127.  Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (cleaned up).  That is, the claim at issue must arise out of the defendant's ties to the forum state.

What's more, the relationship between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State."  *In re Sheehan*, 48 F.4th 513, 522 (7th Cir. 2022) (emphasis in original) (quoting *Walden*, 571 U.S. at 277).  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475).

It is not enough if the plaintiff suffered an injury in the forum state.  "Knowing about a potential for harm in a particular state is not the same as acting *in* that state – and it takes the latter to permit personal jurisdiction under state law."  *See Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (emphasis in original).  A plaintiff must allege "injury *and* 'something more' directed at the state before jurisdiction over a foreign defendant may be considered proper."  *Tamburo*, 601 F.3d at 706 (emphasis in original).

Finally, even if the defendant purposefully directed suit-related conduct at the forum state, the Court's exercise of specific jurisdiction must comply with "traditional notions of fair play and substantial justice" under the Due Process Clause. *Id.* at 702; *see also Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). That is, litigation in the forum state must not be "unreasonable or undue" for the defendant. *See Int'l Shoe*, 326 U.S. at 320.

The Seventh Circuit has distilled the case law and boiled it down to three "essential requirements" for specific jurisdiction. *See Felland*, 682 F.3d at 673. "First, the defendant's contacts with the forum state must show that it 'purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state.' Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *See Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (alterations in original; citation omitted).

The parties seem to agree that the Court lacks general jurisdiction over Defendants. Each Defendant is a citizen of Colorado, and not Illinois. *See* Cplt., at ¶¶ 7–9 (Dckt. No. 1). There is no inkling in the record that Defendants are "doing business" in Illinois (in the jurisdictional sense, that is). A conclusory allegation in the complaint doesn't count. *Id.* at ¶ 10.

In response to the motion to dismiss, Engs makes no argument that this Court has general jurisdiction over Defendants. *See generally* Pl.'s Resp. to Defs.' Mtn. to Dismiss (Dckt. No. 12); *see also* Defs.' Reply to Defs.' Mtn. to Dismiss, at 2 (Dckt. No. 13) ("Indeed, Engs did not respond to Premiere's arguments regarding this Court's lack of general jurisdiction over the Premiere Defendants. Through this lack of Response, Engs has conceded that the Court does not

have general jurisdiction over the Premiere Defendants."). The record does not support a finding of continuous and systematic connections to Illinois. *See Daimler*, 571 U.S. at 127.

Specific jurisdiction, however, is another matter. Defendants argue that the Court lacks specific jurisdiction over them for a few reasons.

First, Defendants contend that they "did not purposefully direct their activities at Illinois or purposefully availed [sic] themselves of the privilege of conducting business in Illinois." *See* Defs.' Mtn. to Dismiss, at 6 (Dckt. No. 10). Second, they argue that this case "does not arise out of or relate to any activities" relating to their contacts with Illinois. *Id.* at 7. And third, they argue that the exercise of personal jurisdiction "would offend the traditional notions of fair play and substantial justice." *Id.* at 12.

On this record, personal jurisdiction is not a close call.

## I.    Purposeful Availment

The first question is whether Defendants purposefully availed themselves of the privilege of conducting business in Illinois, or purposefully directed their activities at this forum. *See Felland*, 682 F.3d at 673. By purposefully directing activities at the forum state, a defendant has fair warning that he could be haled (and hauled) into court there. *See Burger King*, 471 U.S. at 472.

"[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *See Felland*, 682 F.3d at 674. "The appropriate analysis for cases involving intentional torts requires focus on 'the relationship among the defendant, the forum, and the litigation.'" *Matlin v. Spin Master Corp.*, 2018 WL 3496088, at *4 (N.D. Ill. 2018) (quoting *Walden*, 571 U.S. at 290).

Specifically, in a case about intentional torts, personal jurisdiction requires

10

"(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state." *Tower Comm's Expert, LLC v. TSC Constr., LLC*, 2018 WL 5624268, at *6 (N.D. Ill. 2018) (quotation marks omitted) (quoting *Tamburo*, 601 F.3d at 703).

Purposeful availment is like casting a line into a pond, hoping to hook something. After reeling in a big catch, the person holding the fishing pole cannot say that he was not purposefully availing himself of the pond. The same is true when someone goes fishing for dollars.

Defendants argue that they never purposefully directed any activities at Illinois, or purposefully availed themselves of the privilege of conducting business in Illinois. They point to the lack of a footprint in this state. Each Defendant is a citizen of Colorado, and Premiere Copier has no operations, officers, members, or employees in Illinois, either. *See* Defs.' Mtn. to Dismiss, at 8 (Dckt. No. 10).

That argument doesn't get Defendants very far. The complaint alleges that Defendants orchestrated a fraudulent scheme to obtain loans from Engs through false pretenses. Engs claims that Defendants sent fraudulent invoices for equipment that its customers did not want or need, at inflated prices. *See* Cplt., at ¶ 31 (Dckt. No. 1).

Premiere Copier aimed its conduct at Illinois by sending requests for funds here. Defendants knew that Engs would feel the effects here, too. After all, Engs kept its pocketbook here, and the pocketbook was a lot lighter after the fact. *See Felland*, 682 F.3d at 675 ("[T]here is no doubt that Clifton knew the alleged harm would be felt in Wisconsin. Clifton and his associates knew from the beginning that the Fellands were Wisconsin residents . . . and Clifton

11

directed multiple communications via several different media to the Fellands' Wisconsin home.").

Basically, Defendants reached out to Illinois and took funds from the state. Defendants purposefully availed themselves of Illinois by soliciting and obtaining funds here. *See Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (holding that purposeful availment requires a showing that defendant "deliberately reached out beyond its home – by, for example, exploiting a market in the forum State or entering a contractual relationship centered there") (cleaned up); *Lexington Ins. Co.*, 938 F.3d at 880 ("To conclude that personal jurisdiction exists, we need to see evidence that Zurich and Taian reached out to Wisconsin during the formation and execution of these contracts."); *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 581 (7th Cir. 1994) ("This circuit and others have found that a defendant's participation in substantial preliminary negotiations conducted in the forum state leading to the contract in issue is a sufficient basis for personal jurisdiction."); *Putnam Energy Holdings, LLC v. FracXchange.com, LLC*, 2020 WL 6321943, at *2 (N.D. Ill. 2020) (exercising personal jurisdiction over a defendant who "helped solicit . . . business in Illinois, took part in negotiating the pricing and delivery terms of the deal . . . in Illinois, and . . . reached out to . . . Illinois over the course of the parties' dealings via emails").

The record shows purposeful availment, especially from a "follow the money" perspective. Premiere Copier reached out to Illinois and established a relationship with Engs to obtain financing. And then, the money flowed from Illinois. Time and again, Premiere Copier sent requests for money to Illinois, and received money from Illinois. In essence, Premiere Copier cast a line in the water in Illinois, dozens of times, and landed a haul of loans.

The fact that Defendants never personally set foot in Illinois is not dispositive. Personal jurisdiction does not require a footprint. *See Burger King*, 471 U.S. at 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."); *see also Curry*, 949 F.3d at 398 ("Our cases make clear . . . that physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state.").

Personal jurisdiction requires purposeful availment. And here, Defendants reached out to Illinois dozens of times during the fraudulent scheme, which is more than enough to establish purposeful availment. *See* Cplt., at ¶¶ 10–11, 48 (Dckt. No. 1); Kerrins Dec., at ¶¶ 4, 8–9 (Dckt. No. 12-1) (attesting that Defendants called and telephoned Engs, and sent W-9 forms and wire instructions for payment); *see also Pentwater Equity Opportunities Master Fund, Ltd. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, 2016 WL 454342, at *7 (N.D. Ill. 2016) ("The fact that Baker attorneys never travelled to Illinois as part of the transaction is not dispositive given the extensive phone and email communications between Baker and Pentwater representatives in Illinois.") (citing *Burger King*, 471 U.S. at 476).

Other courts have reached the same conclusion in similar cases about fraud. *See, e.g.*, *Linkepic v. Vyasil*, 146 F. Supp. 3d 943, 951 (N.D. Ill. 2015) (finding personal jurisdiction over an out-of-state defendant who sent the plaintiff "false invoices because he allegedly wanted to collect money"); *Miller v. Miller*, 2018 WL 3427914, at *3 (N.D. Ill. 2018) (finding personal jurisdiction over an out-of-state defendant in a fraud case when defendant sent a check to the plaintiff in Illinois "and directed communications to her there"); *Levin v. Posen Found.*, 62 F. Supp. 3d 733, 740 (N.D. Ill. 2014) (finding personal jurisdiction when the out-of-state defendant

13

sent email, phone, and fax communications that "contained the allegedly fraudulent and misleading information on which [the plaintiff] bases his claim").

So too here. The complaint alleges that Defendants reached out to Engs in Illinois, and solicited funds again and again under false pretenses. The repeated communications to Illinois, and the repeated receipt of funds from Illinois, is more than enough to establish purposeful availment. The whole point was to remove money from Illinois.

## II.    Arising Out of the Contacts

Next, Defendants argue that the claim does not arise out of any contacts with Illinois. As they see it, sending an invoice to Engs "does not form the basis of Engs' alleged harm." *See* Defs.' Mtn. to Dismiss, at 9 (Dckt. No. 10). The argument quickly flips to the merits. "Engs has concocted an alleged conspiracy because its borrowers have loans with Plaintiff that were used by the borrowers to fund their purchase of equipment that they, the borrowers, acquired from defendant Premiere Copier." *Id.*

Defendants don't have a leg to stand on. Defendants had repeated contacts with the forum state. They reached out to Engs in Illinois to start a financing relationship. Then, they sent dozens of invoices to Illinois for the purpose of obtaining loans.

Those communications are not a sideshow or an unrelated chapter in some other story. Quite the opposite – they are at the heart of the drama told in the complaint. The "communications were not just incidental but are central to the fraudulent course of conduct alleged in the complaint." *See Felland*, 682 F.3d at 677.

The fraud claim arises out of those contacts with Illinois. If anything, it is hard to see how the nexus could be any closer.

14

### III.     Fair Play and Substantial Justice

Finally, Defendants argue that exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice under the Due Process Clause.  *See* Defs.' Mtn. to Dismiss, at 11–12 (Dckt. No. 10).  They point out that it would be burdensome to litigate in Illinois because they live and work in Colorado.  *Id.* at 12.

When evaluating personal jurisdiction over a defendant, a court must consider "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'"  *Felland*, 682 F.3d at 677 (quoting *Burger King*, 471 U.S. at 477).  "'[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King*, 471 U.S. at 477).

Applying the *Burger King* factors, this Court sees no unfairness in exercising personal jurisdiction over Defendants.  For starters, Illinois has an interest in addressing a fraud allegedly committed against an Illinois company.  "[A]s is almost always the case, [Illinois] has a strong interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state."  *Id.*  Engs, too, has an interest in litigating its claims in its home state.

True, Defendants are out-of-state, and will face some burden in litigating in Illinois.  But there is nothing unfair about litigating here.  Defendants took money from Illinois, so they can defend the taking of the money from Illinois in Illinois.  Defendants "cannot be heard to

15

complain of the burden they allegedly invited." *Linkepic*, 146 F. Supp. 3d at 954 (quotations omitted). And, in any event, there is no reason to think this litigation would be unusually burdensome on the out-of-state parties.

In sum, this Court concludes that exercising personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction is hereby denied.

Date: May 4, 2023

_____

Steven C. Seeger
United States District Judge

16